1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

PENSION TRUST FUND FOR OPERATING
ENGINEERS, et al.,

            Plaintiffs,

      v.

CHEVREAUX AGGREGATES, INC., et al.,

            Defendants.

_____/

No. C 11-03285 LB

**ORDER THAT CASE BE
REASSIGNED TO A DISTRICT
COURT JUDGE**

**REPORT AND RECOMMENDATION**

[Re: ECF No. 35]

## I.  INTRODUCTION

Pension Trust Fund for Operating Engineers (the "Trust"), F.G. Crosthwaite, and Russell E.

Burns (collectively, "Plaintiffs") sued Chevreaux Aggregates, Inc. ("CAI"), Chevreaux Concrete,

Inc. ("CCI"), and Martha E. Chevreaux (as trustee for the Chevreaux Family Revocable Trust of

1973 and for the Martha E. Chevreaux Revocable Trust of 2004) (collectively, "Defendants") for

completely withdrawing from the Trust in violation of the parties' collective bargaining agreement

and the Employee Retirement Income Security Act ("ERISA"), Pub. L. No. 93-406 (codified in part

at 29 U.S.C. § 1002 et seq.).  *See* Complaint, ECF No. 1 at 1, ¶ 2.[1]  Following a hearing on

November 15, 2012, and upon consideration of the papers submitted, this court finds that (a)

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page
number at the top of the document, not the pages at the bottom.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiffs established subject-matter and personal jurisdiction, and (b) the factors in *Eitel v. McCool*

2    favor entry of default judgment against CAI and CCI.

3          Because CAI and CCI have not consented to or declined the court's jurisdiction, the court

4    **ORDERS** that the Clerk of the Court reassign this case to a district court judge and

5    **RECOMMENDS** that the newly-assigned district court judge **GRANT** the motion for default and

6    enter default judgment against CAI and CCI in the amount of $1,184,169.00 in withdrawal liability,

7    $271,547.91 in interest (calculated from the due date of the contributions to the date of the hearing

8    on Plaintiffs' motion), $236,833.80 in liquidated damages, $35,603.50 in attorney's fees, and

9    $1,998.81 in costs.

10                                    **II.  FACTS**

11   **A.  <u>The Parties to and Terms of the Collective Bargaining Agreement and Trusts</u>**[2]

12         The Trust is (a) an employee benefit plan as defined in the ERISA §3(3) (29 U.S.C. § 1002(3)),

13   (b) an "employee benefit pension plan" as defined in §3(2) of ERISA (29 U.S.C. § 1002(2)) and (c)

14   a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and

15   1301(a)(3)).  Complaint, ECF No. 1, ¶ 5; Trento Decl., ECF No. 36, ¶2.  The Trust primarily covers

16   employers in the building and construction industry.  Trento Decl., ECF No. 36, ¶ 2.  Mr.

17   Crosthwaite and Mr. Burns are members of the Board of Trustees of the Trust ("Trustees").

18   Complaint, ECF No. 1, ¶ 6; Trento Decl., ECF No. 36, ¶3.  The Trustees are "fiduciaries" with

19   respect to the Trust as defined in ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)), and are collectively

20   the "plan sponsor" of the Board of Trustees within the meaning of ERISA §§ 3(16)(B)(iii) and

21   4001(a)(10)(A) (29 U.S.C. §§1002(16)(B)(iii) and 1301(a)(10)(A)).  Complaint, ECF No. 1, ¶ 6.

22         CAI is a California corporation with a dissolved corporate status that is located in Auburn,

23   California and Meadow Vista, California.  Complaint, ECF No. 1, ¶ 7; Babu Decl., ECF No. 37, ¶ 2,

24   Exh. A.  CCI is a California corporation with a dissolved corporate status that is located in Auburn,

25

26         [2] After entry of default, well-pleaded allegations in the complaint regarding liability and
27   entry of default are taken as true, except as to the amount of damages.  *See Fair Housing of Marin v.
     Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Thus, the court relies on Plaintiffs' allegations and
28   submitted declarations for the factual description presented here.

California.  Complaint, ECF No. 1, ¶ 8; Babu Decl., ECF No. 37, ¶ 3, Exh. B.  CAI is an employer within the meaning of ERISA § 3(5) of (29 U.S.C. § 1002(5)) and National Labor Relations Act ("NLRA") § 2(2) (29 U.S.C. § 152(2)), and is engaged in an industry affecting commerce within the meaning of ERISA § 3(11) and (12) (29 U.S.C. § 1002(11) and (12)).  Complaint, ECF No. 1, ¶ 7.  Per corporate minutes and stock ledgers, CAI and CCI are owned 100% each by the same five shareholders who have a controlling interest and are in effective control.  Babu Decl., ECF No. 37, ¶ 5, Exh. C.

Defendant CAI was a participating employer in the Trust pursuant to collective bargaining agreements (the "Bargaining Agreement") with the Operating Engineers Local Union. 3 (the "Union") that required it to make fringe benefit contributions for all covered work performed by its employees.  Complaint, ECF No. 1, ¶ 15; Trento Decl., ECF No. 36, ¶ 5, Exh. A.  The Union is a labor organization as defined in NLRA § 2(5) (29 U.S.C. §152(5)) that represents employees in an industry affecting interstate commerce.  Complaint, ECF No. 1, ¶ 15.  CAI was obligated to and did make contributions to the Trust on behalf of its employees that were covered under the Bargaining Agreement.  *Id.*

On or about January 31, 2010, CAI made a complete withdrawal from the Trust under ERISA § 4203(a) (29 U.S.C. § 1383(a)) which thereby made it subject to withdrawal liability.  Complaint, ECF No. 1, ¶ 16; Trento Decl., ECF No. 36, ¶ 8.  By letter dated June 21, 2010, Plaintiffs assessed withdrawal liability of $1,179,242 against CAI pursuant to ERISA § 4201 et seq. (29 U.S.C. §1381 et seq.).  Complaint, ECF No. 1, ¶ 17; Trento Decl., ECF No. 36, ¶ 10, Exh. E.  Specifically, the Trust notified CAI of the following in its June 21, 2010, notice of assessment:

    a. The Plan had a fiscal year running from January 1 through December 31 and therefore, the withdrawal liability was calculated as of December 31, 2009, as required by ERISA § 4211(b)(2)(A) (29 U.S.C. §1391(b)(2)(A)).

    b. The withdrawal liability of Defendant CAI could be paid in a lump sum or in quarterly installments as follows:

        $28,212.00 August 1, 2010
        $28,212.00 November 1, 2010
        $28,212.00 February 1, 2011
        $28,212.00 May 1, 2011
        $28,212.00 each succeeding quarter through May 1, 2028
        $ 6,581.94 August 1, 2028

c. Defendant CAI had the option of challenging the calculation of the withdrawal liability by requesting review within ninety (90) days from receiving the notice of the withdrawal liability assessment as provided by ERISA §4219(b)(2) (29 U.S.C. § 1399(b)(2)).

d. Any dispute concerning a determination of withdrawal liability must be resolved through arbitration provided that arbitration was timely initiated under ERISA § 4221(a) (29 U.S.C. §1401(a)).

e. A list of all trades and businesses in the same controlled group was required to be provided within thirty (30) days pursuant to ERISA §4219(a) (29 U.S.C. §1399(a)).

Complaint, ECF No. 1, ¶ 18.  By letter dated September 21, 2010, CAI requested review of its withdrawal liability.  *Id.*, ¶ 19; Babu Decl., ECF No. 37, ¶ 6, Exh. D.  On September 8, 2010, November 12, 2010, December 2, 2010, February 3, 2011, and April 26, 2011, the Plan produced various documents in response to CAI's request for review.  Complaint, ECF No. 1, ¶ 19; Babu Decl., ECF No. 37, ¶ 7.  Defendants failed to make any withdrawal liability installment payments.  Complaint, ECF No. 1, ¶ 20; Trento Decl., ECF No. 36, ¶ 14. As such, the Trust notified CAI on November 12, 2010, that CAI would be in default if it failed to cure its delinquent installment payments within sixty (60) day pursuant to ERISA.  Complaint, ECF No. 1, ¶ 20; Babu Decl., ECF No. 36, ¶ 8, Exh. E.  CAI failed to cure their delinquency and thus, are in default under ERISA §4219(c)(5).  Complaint, ECF No. 1, ¶ 20; Babu Decl., ECF No. 37, ¶ 8.

On January 6, 2011, the Trust notified CAI and CCI that the withdrawal liability had been recalculated for the sum of $1,184,169 based on additional information made available to the actuary for the Trust.  Complaint, ECF No. 1, ¶ 21; Trento Decl., ECF No. 36, ¶ 13, Exh. H.  The Trust confirmed that the quarterly payment amount and payment schedule remained unchanged with the exception of the final payment, due August 1, 2028, being increased to $24,692.62.  Complaint, ECF No. 1, ¶ 21; Trento Decl., ECF No. 36, ¶ 13, Exh. H.

CAI initiated arbitration under ERISA § 4219(c)(5) (29 U.S.C. § 1399(c)(5)) and 29 C.F.R. § 4219.31 on January 11, 2011, with the American Arbitration Association ("AAA").  Complaint, ECF No. 1, ¶ 22; Babu Decl., ECF No. 37, ¶ 9, Exh. F.  Thereafter, on May 20, 2011, counsel for CAI advised AAA and Plaintiffs' counsel that it was withdrawing as counsel for CAI.  Complaint, ECF No. 1, ¶ 22; Babu Decl., ECF No. 37, ¶ 10, Exh. G.  As a result, the Plan accelerated the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   withdrawal liability of $1,184,169 on the same day pursuant to ERISA § 4219(c)(5) (29 U.S.C. §

2   1399(c)(5)) and Section XII of the Plan's Withdrawal Liability Assessment Procedures.  Complaint,

3   ECF No. 1, ¶ 22; Babu Decl., ECF No. 37, ¶ 11, Exh. H.  On June 6, 2011, AAA closed it file based

4   on a notice from CAI that it withdrew its arbitration demand. Complaint, ECF No. 1, ¶ 23; Babu

5   Decl., ECF No. 37, ¶ 12, Exh. I.

6   **B.  Notice to CAI and CCI of this Action, Their Default, and Plaintiffs' Motion for Default**

7   **Judgment**

8   　　Plaintiffs filed their complaint on July 5, 2011 and served CAI and CCI on July 12, 2011.

9   Complaint, ECF No. 1; Proof of Service (CAI), ECF No. 9; Proof of Service (CCI), ECF No. 10.

10  On August 9, 2011, after CAI and CCI failed to file a responsive pleading or otherwise appear in the

11  case, Plaintiffs requested entry of default and mailed copies of this request to CAI and CCI on the

12  same day.  Request for Entry of Default, ECF No. 13.  The Clerk of the Court entered CAI's and

13  CCI's default on August 10, 2011.  Entry of Default, ECF No. 14.  On September 20, 2012,

14  Plaintiffs filed a motion for default judgment and served CAI and CCI on the same day.  Motion,

15  ECF No. 35; Proof of Service, ECF No. 39.[3]  In their motion, Plaintiffs seek a default judgment

16  against CAI and CCI for the following amounts: $1,184,169.00 in withdrawal liability, $271,547.91

17  in interest (from August 1, 2010 through November 15, 2012), $236,833.80 in liquidated damages,

18  $35,603.50 in attorney's fees, and $1,998.81 in costs.  Motion for Default Judgment, ECF No. 35 at

19  6, 10-17.

20  　　　　　　　　　　　　　　　**III.  DISCUSSION**

21  **A.  Subject-Matter and Personal Jurisdiction**

22  　　Before entering default judgment, the court must determine whether it has subject-matter

23

24  ─────────────

25  　　[3] CAI and CCI are the only remaining live defendants to this action.  Plaintiffs voluntarily
    dismissed Chevreaux Family Irrevocable Credit Trust of 1973 on August 8, 2012, Voluntary

26  Dismissal, ECF No. 34, and Plaintiffs and Martha E. Chevreaux Revocable Trust of 2004 submitted
    a stipulated judgment on September 27, 2012 (and the court approved it on October 3, 2012),

27  Stipulated Judgment, ECF No. 42.  However, the 2004 Trust has not made any payments and
    apparently does not anticipate making any payments under the stipulated judgment because it claims

28  it has insufficient assets. Babu Decl., ECF No. 37, ¶ 13.

1    jurisdiction over the action and personal jurisdiction over CAI and CCI.  *See In re Tulli*, 172 F.3d

2    707, 712 (9th Cir. 1999).

3        1.  <u>Subject-Matter Jurisdiction</u>

4        Plaintiffs allege that CAI completely withdrew from the Trust on January 31, 2010 and, thus,

5    CAI and CCI are subject to withdrawal liability under ERISA § 4203 (29 U.S.C. § 1383).  The court

6    has subject-matter jurisdiction over this federal claim.  *See* 28 U.S.C. § 1331(a).

7        2.  <u>Personal Jurisdiction</u>

8        CAI and CCI were served in California and engaged in business activities in the Northern

9    District of California that are the subject of this action.  Complaint, ECF No. 1, ¶¶ 7-8; Proof of

10   Service (CAI), ECF No. 9; Proof of Service (CCI), ECF No. 10.  The court has personal jurisdiction

11   over them.  *See, e.g., S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007); *Draper v. Coombs*, 792

12   F.2d 915, 924 (9th Cir. 1986).

13   **B.  <u>Default Judgment</u>**

14       Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court

15   for—and the court may grant—a default judgment against a defendant who has failed to plead or

16   otherwise defend an action.  *See Draper*, 792 F.2d at 925.  Default judgments generally are

17   disfavored because "cases should be decided on their merits whenever reasonably possible."  *Eitel v.*

18   *McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986).  The court must consider the following

19   factors—commonly referred to as the *Eitel* factors—when deciding whether to use its discretion to

20   grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of

21   plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in

22   the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to

23   excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure

24   favoring decisions on the merits.  *Id.* at 1471-72.  The factors here favor entry of default judgment

25   against CAI and CCI.

26       1.  <u>The Merits and Sufficiency of the Complaint (The Second and Third Eitel Factors)</u>

27       After entry of default, well-pleaded allegations in the complaint regarding liability and entry of

28   default are taken as true, except as to the amount of damages.  *See Fair Housing of Marin v. Combs*,

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

285 F.3d 899, 906 (9th Cir. 2002).  The court is not required to make detailed findings of fact.  *Id.*  Default judgment cannot exceed in amount what is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

In their first cause of action, Plaintiffs allege that CAI and CCI are liable for CAI's complete withdrawal from the Trust under ERISA § 4219 (29 U.S.C. § 1381).[4]  An employer that withdraws from the Trust must pay withdrawal liability to the Trust.  29 U.S.C. § 1383.  ERISA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)."  29 U.S.C. § 1451(b).  In an action to enforce payment of delinquent contributions, "the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (c) . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), . . . and (E) such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).

The procedure for challenging the amount assessed for withdrawal liability appears in 29 U.S.C. § 1399(b)(2)(A) and 1401(a)(1)(A).  Section 1399(b) (2)(A) states:

> (A) No later than 90 days after the employer receives the notice [of the amount of withdrawal liability assessed], the employer
>
> > (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
> >
> > (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
> >
> > (iii) may furnish any additional relevant information to the plan sponsor.

---

[4] In their motion for default judgment, Plaintiffs make no mention of their second cause of action for violation of ERISA § 4219(a) (29 U.S.C. § 1399(a)), which mandates that "an employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements" of ERISA regarding employer withdrawals.  *See* Complaint, ECF No. 1, ¶¶ 31-35.  Accordingly, it appears that Plaintiffs have abandoned this cause of action, and the court does not consider it here.

1  And Section 1401(a) (1)(A) states:

2      (1) Any dispute between an employer and the plan sponsor of a multiemployer plan
       concerning a determination made under sections 4201 through 4219 [29 U.S.C. §
3      1381–99] shall be resolved through arbitration. Either party may initiate the
       arbitration proceeding within a 60–day period after the earlier of(A) the date of
4      notification to the employer under section4219(b)(2)(B) [29 U.S.C. § 1399(b)(2)(B) ],
       or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A)
5      [29 U.S.C. § 1399(b)(2)(A) ].

6  Section 1401(b)(1) goes on to state:

7      If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts
       demanded by the plan sponsor under section 4219(b)(1) [29 USCS § 1399(b)(1)]
8      shall be due and owing on the schedule set forth by the plan sponsor.  The plan
       sponsor may bring an action in a State or Federal court of competent jurisdiction for
9      collection.

10  Here, CAI made a complete withdrawal from participation in the Trust on or about January 31,

11  2010.  Complaint, ECF No. 1, ¶ 16; Trento Decl., ECF No. 36, ¶ 8.  Plaintiffs assessed withdrawal

12  liability against CAI, and CAI requested review.  Complaint, ECF No. 1, ¶¶ 17-19; Trento Decl.,

13  ECF No. 36, ¶ 10, Exh. E; Babu Decl., ECF No. 37, ¶ 6, Exh. D.  The Plan produced various

14  documents in response to CAI's request for review.  Complaint, ECF No. 1, ¶ 19; Babu Decl., ECF

15  No. 37, ¶ 7.  Defendants still failed to make any withdrawal liability installment payments.

16  Complaint, ECF No. 1, ¶ 20; Trento Decl., ECF No. 36, ¶ 14.  Then, CAI initiated arbitration, but

17  later it withdrew its arbitration demand.  Complaint, ECF No. 1, ¶¶ 22-23; Babu Decl., ECF No. 37,

18  ¶¶ 9, 12, Exhs. F, I.  Thus, Plaintiffs' assessed withdrawal liability is binding on CAI and CCI under

19  ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)).  *See Teamsters Pension Trust Fund–Bd. of Tr. of the*

20  *Western Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987) (failure to initiate

21  arbitration within the statutory period constitutes a waiver of objections to the withdrawal liability

22  calculation).[5]

23  ────────────

24      [5] Under ERISA § 4001(b)(1) (29 U.S.C. § 1301(b)), all trades or businesses (whether or not
   incorporated) which are under common control shall be treated as a single employer in accordance
25  with Internal Revenue Code § 414(c) and each member of the control group is jointly and severally
   liable for their own and each other member's withdrawal liability.  IRC §414(c)-2(c)(1) provides
26  that trades or businesses are under common control if the same five or fewer people own a
   controlling interest (i.e. 80% or more) in each organization and are in effective control (i.e. more
27  than 50%) of each organization.  Per corporate minutes and stock ledgers Defendants CAI and CCI
   are owned 100% each by the same five (5) shareholders who have a controlling interest and are in
28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   2. <u>The Remaining Eitel Factors</u>

2   The remaining *Eitel* factors weigh in favor of granting default judgment.

3       *i.  The Possibility of Prejudice to Plaintiffs*

4   If the motion is not granted, Plaintiffs have no recourse to enforce the terms of the agreement

5   requiring CAI and CCI to make plan contributions and pay liquidated damages.

6       *ii.  The Possibility of a Dispute concerning a Material Fact*

7   CAI and CCI never answered the complaint, and so there is no information that there might be a

8   disputed issue of material fact.  The issues are straightforward: did CAI and CCI fail to make timely

9   contributions required by the agreement and withdraw from the Trust, and what are the damages.

10  Given that the issues are easily ascertainable, the possibility for substantial fact disputes seems

11  unlikely.

12      *iii.  Excusable Neglect*

13  There is no suggestion of excusable neglect.

14      *iv.  The sum of money at stake in the action*

15  When the money at stake in the litigation is substantial or unreasonable, default judgment is

16  discouraged.  *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of

17  parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v.*

18  *Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of*

19  *Trustees*, 2010 WL 145097 at *3 (*citing Eitel*, 782 F.2d at 1472).  Nevertheless, where the sum of

20  money at stake is tailored to the specific misconduct of the defendant, default judgment may be

21  appropriate.  *Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall*

22  *Mechanical, Inc.,* 2011 WL 2600898 at *2 (the sum of money for unpaid contributions, liquidated

23  damages, and attorneys fees were appropriate as they were supported by adequate evidence provided

24  by plaintiffs).  The amounts sought here are appropriate as they are supported by the evidence, and

25  they are required by both the Bargaining Agreement and ERISA § 4221(b)(1) (29 U.S.C. §

26  _____

27  effective control. Babu Decl., ECF No. 37, ¶ 5, Exh. C. Thus, Defendants CAI and CCI are in the
    same controlled group and are treated as a single employer and are jointly and severally liable for

28  Defendant CAI's withdrawal liability pursuant to ERISA §4001(b)(1) (29 U.S.C. §1301(b)).

UNITED STATES DISTRICT COURT
For the Northern District of California

1401(b)(1)).  This factor does not disfavor entry of default judgment in this case.

     *v.  The Strong Policy in the Federal Rules Favoring Decisions on the Merits*

     Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case.  Fed. R. Civ. P. 55(b); *see Board of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, *4 (N.D. Cal. Jan. 8, 2010).  This factor also favors entry of default judgment in this case.

**C.  The Relief Sought**

    1.  The Withdrawal Liability

     As explained above, under 29 U.S.C. § 1399, the amount of a withdrawing employer's withdrawal liability is first computed by the pension plan's sponsor.  The employer is then notified of the amount owed and is entitled, within ninety days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability.  29 U.S.C. § 1399(c).  "Any dispute" between an employer and the plan sponsor relating to the employer's withdrawal liability "shall be resolved through arbitration."  29 U .S.C. § 1401(a)(1).  Arbitration may be initiated "within a 60–day period" after the employer is notified of the sponsor's final determination concerning withdrawal liability (or 120 days after the employer requested the sponsor to review the matter, whichever date is earlier). 29 U.S.C. § 1401(a)(1).  If arbitration proceedings are not initiated within the time periods prescribed by the statute, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor."  29 U.S.C. § 1401(b)(1).  If the employer fails to make payment when due, and fails to cure the delinquency within sixty days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability.  29 U.S.C. § 1399(c)(5).

     Here, Plaintiffs assessed CAI's and CCI's withdrawal liability to be $1,184,169, ECF No. 1, ¶ 21; Trento Decl., ECF No. 36, ¶ 13, Exh. H.  Plaintiffs followed the procedures required by ERISA for computing the amount and notifying CAI of it.  CAI withdrew its arbitration demand and has not made any payment.  Thus, Plaintiffs' assessed withdrawal liability of $1,184,169 is binding on CAI and CCI under ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)).

1    2.  Interest

2    Interest on unpaid contributions must be calculated "by using the rate provided under the plan,

3    or, if none, the rate prescribed under Section 6621 of Title 26."  Under the Delinquency Collection

4    Procedures and Section X of the Withdrawal Liability Assessment Procedures adopted by the

5    Trustees, Plaintiffs are entitled to 10% interest on unpaid contributions.  Trento Decl., ECF No. 36,

6    ¶¶ 7,10, Exhs. C, E.  Under ERISA § 4219(c)(5) (29 U.S.C. 1399(c)(5)), interest on the accelerated

7    withdrawal liability accrues from the due date of the first delinquent installment payment.

8    Accordingly, 10% interest on the unpaid withdrawal liability of $1,184,169.00 has been accruing

9    since August 1, 2010, the date of Defendants' first missed installment payment.  Interest in the sum

10   of $271,547.91 has accrued from August 1, 2010, through November 15, 2012, the date of the

11   hearing on this motion.  Trento Decl., ECF No. 36, ¶ 15.  Thus, Plaintiffs are entitled to this amount

12   of interest.

13   3.  Liquidated Damages

14   Under ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)), liquidated damages may be awarded when:

15   (1) the employer is delinquent at the time the action is filed, (2) the court enters a judgment against

16   the employer, and (3) the plan provides for an award of liquidated damages.  *See Nw. Adm'rs, Inc. v.*

17   *Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir.1996).  Here, CAI and CCI are currently in default of

18   the entire unpaid withdrawal liability, as no payments have been made thus far.  The

19   Delinquency Collection Procedures and Section XI of the Withdrawal Liability Assessment

20   Procedures adopted by the Trustees adopted by the Trustees provide for liquidated damages at the

21   rate of 20% of the delinquent amount upon commencement of litigation.  Trento Decl., ECF No. 36,

22   ¶¶ 7, 10, Exh. C, E.  Thus, Plaintiffs are entitled to recover liquidated damages of $236,833.80

23   ($1,184,169 x 0.2) because they were required to file this suit in an attempt to recover the

24   withdrawal liability owed by CAI and CCI.  Trento Decl., ECF No. 36, ¶ 16.

25   4.  Attorney's Fees and Costs

26   Plaintiffs also ask for attorney's fees of $35,603.50.  Babu Decl., ECF No. 37, ¶¶ 17-23, Exh. J.

27   And they ask for costs of $1,998.81, too.  Babu Decl., ECF No. 37, ¶ 24.  The costs are comprised of

28   a $350 filing fee, $414.95 for the service of the court documents, $191.00 for the delivery of

C 11-03285 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

1  documents to the court, and $1,042.86 in research costs.  *Id*.  These costs are reasonable.

2      As for the requested attorney's fees, an award of fees is mandatory because contributions are

3  unpaid, and the plan provides for reasonable fees and costs.  *See Nw. Adm'rs*, 104 F.3d at 257.  Fees

4  also are allowed and appropriate under the terms of the Bargaining Agreement.

5      To determine a reasonable fee award in a case like this, federal courts use the lodestar method.

6  *Grove v. Wells Fargo Financial Cal., Inc.,* 606 F.3d 577, 582 (9th Cir. 2010).  The court calculates a

7  "lodestar amount" by multiplying the number of hours counsel reasonably spend on the litigation by

8  a reasonable hourly rate.  *Id.*

9          *i.  Reasonable Hourly Rate*

10     A reasonable hourly rate is that prevailing in the community for similar work performed by

11 attorneys of comparable skill, experience, and reputation.  *Moreno v. City of Sacramento*, 534 F.3d

12 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).

13 The relevant community is "the forum in which the district court sits," which here is the Northern

14 District of California.  *Camacho*, 523 F.3d at 979.   The party requesting fees must produce

15 satisfactory evidence – in addition to the attorney's own affidavits or declarations – that the rates are

16 in line with community rates.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v.

17 Multomah County*, 815 F.2d 1258, 1263 (9th Cir.1987).  Plaintiffs described the qualifications and

18 rates of Richard Johnson ($265.00-$275.00 per hour), Michelle Sicula ($195.00 per hour), Shaamini

19 Babu ($195.00-$205.00 per hour), and the paralegals who worked on the case (Barbara Savino

20 ($115.00 per hour) and Jonathan Sha ($115.00-$120.00 per hour)).  Babu Decl., ¶¶ 17-21, Exh. J..

21 The court's docket review establishes that the Northern District has approved roughly similar hourly

22 rates for counsel.  *See, e.g.*, *Pension Trust Fund for Operating Engineers v. Joco Geospatial

23 Companies, Inc.*, No. No. C–11–2482 EMC, 2011 WL 6303404, at *5 (N.D. Cal. Dec. 16, 2011)

24 (finding rates of $195.00 per hour for the associate and $115.00 per hour for the paralegals to be

25 reasonable); *Operating Engineers' Pension Trust Fund v. Clark's Welding and Mach.*, No. 09–0044

26 SC, 2010 WL 1729475, at *5 (N.D. Cal. Apr. 27, 2010) (finding paralegal rates of $110 per hour,

27 associate rates of $180–185 per hour, and shareholder rates of $255 per hour to be reasonable).  This

28 court, too, finds that Plaintiffs' counsels' hourly rates are reasonable.

UNITED STATES DISTRICT COURT
For the Northern District of California

*ii. Reasonable Hours Expended*

Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The party requesting fees must provide detailed time records documenting the tasks completed and the time spent.  *See Hensley*, 461 U.S. at 434; *McCown*, 565 F.3d at 1102; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

Plaintiffs seek attorney's fees for 142.8 attorney hours and 56.2 paralegal hours.  Babu Decl., ECF No. 37, ¶¶ 14, 17-19, 22-24, Exh. J.  These hours were spent on the following:

> The attorneys' fees and costs specified herein were incurred by the Trust in connection with the review of files; tracking of statutory deadlines applicable to withdrawal liability; preparation of the Complaint, Summons, Certificate of Interested Parties, notice to PBGC, Consent to Proceed Before a U.S. Magistrate Judge, Request for Entry of Default, ADR Certification Stipulation and Proposed Order selecting Mediation, Mediation Brief, Joint Case Management Statements; participation in pre-mediation conference call and mediation; correspondence with Trustees, the Trust's third party administrator, Union district representatives, and opposing counsel; legal research; review of investigative documents; preparation of Request for Production of Documents and Special Interrogatories; responses to Request for Production of Documents and Special Interrogatories; review of corporate and financial records produced by Defendants; analysis of controlled group members; effectuating service on defendants; review of Defendants' Answers; preparation of this Motion for Default Judgment, supporting declarations and Proposed Judgment; and electronic filings and service of documents.

Babu Decl., ECF No. 37, ¶ 15.

Based on Plaintiffs' documentation of attorney and paralegal hours, the court finds that attorney's fees for 142.8 hours of work done by attorneys and 56.2 hours of work done by paralegals is reasonable.  Accordingly, Plaintiffs are entitled to attorney's fees in the amount of $35,603.50 and costs in the amount of $1,998.81.

## IV.  CONCLUSION

For the reasons stated above, the court **ORDERS** the Clerk of the Court to reassign this case to a district court judge and **RECOMMENDS** that the newly-assigned district court judge **GRANT** Plaintiffs' motion for default judgment against CAI and CCI and enter default judgment against them in amount of $1,184,169.00 in withdrawal liability, $271,547.91 in interest, $236,833.80 in liquidated damages, $35,603.50 in attorney's fees, and $1,998.81 in costs.

1    Any party may file objections to this Report and Recommendation with the district judge within

2    fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.

3    Cal. Civ. L.R. 72.  Failure to file an objection may waive the right to review of the issue in the

4    district court.

5        The court **ORDERS** Plaintiffs to serve a copy of this report and recommendation on Defendant.

6        **IT IS SO ORDERED.**

7    Dated: November 16, 2012

8                                                    LAUREL BEELER
                                                     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-03285 LB
ORDER

14